UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| WERNER CO., | Plaintiff/Counter Defendant, |
| v. | Civil Action No. 3:18-cv-794-DJH-CHL |
| LOUISVILLE LADDER, INC., | Defendant/Counter Claimant. |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Werner Co. moves for leave to file a second amended complaint. (Docket No. 54) Defendant Louisville Ladder, Inc. opposes the motion. (D.N. 55) For the reasons explained below, the Court will grant Werner's motion.

**I.**

Werner initiated this action against Louisville Ladder on November 30, 2018, requesting a declaratory judgment of non-infringement of one or more claims of Louisville Ladder's U.S. Patent No. 7,000,731 (the '731 patent). (D.N. 1, PageID.1 ¶ 1) The '731 patent is entitled "Multi-Material Cover for a Ladder Rail End." (*Id.*) Werner initially alleged that since 2017, "Louisville Ladder has asserted that Werner infringes on one or more claims of the '731 patent." (*Id.*, PageID.2 ¶ 7) Werner then filed an amended complaint adding Count II, invalidity of the '731 patent under 35 U.S.C. §§ 102, 103, and/or 112, and Count III, unenforceability of the '731 patent due to inequitable conduct. (D.N. 14, PageID.79–89 ¶¶ 17–69) The parties later filed a joint motion to stay the case pending the resolution of Werner's petition for *inter partes* review by the Patent Trial and Appeal Board (PTAB). (D.N. 22) The Court granted the motion, and the case was stayed on June 12, 2019. (D.N. 23)

1

On August 24, 2020, the PTAB issued a final decision determining that claims 8–16 and 19–20 of the '731 patent were unpatentable (D.N. 30, PageID.179 ¶ 3) because the claimed subject matter was anticipated by and/or obvious in view of "the prior art 2001 Louisville Catalog, the prior art Plotner patent, and the prior art 2000 Werner Brochure." (D.N. 54-3, PageID.272 ¶ 74) The PTAB also cancelled claims 8–16 and 19–20 of the '731 patent based on the same prior art references. (*Id.*) Louisville Ladder appealed the decision to the United States Court of Appeals for the Federal Circuit (D.N. 32, PageID.183 ¶ 4), and that court affirmed the PTAB's decision. (D.N. 38, PageID.197 ¶ 7) The parties then agreed that Counts I and II of the amended complaint were moot, leaving Count III as the sole remaining claim. (D.N. 40, PageID.200 ¶ 9) The parties and their representatives engaged in a settlement conference but were unable to come to an agreement. (D.N. 47) The Court subsequently issued a Scheduling Order for the resolution of this case. (D.N. 53)

Werner now moves for leave to file a second amended complaint to add thirty-nine allegations in support of its claim for patent unenforceability due to inequitable conduct (Count III). (D.N. 54; *see also* D.N. 54-3, PageID.271–78 ¶¶ 70–108) The new allegations specifically address the materiality of the undisclosed prior art and Louisville Ladder's intent to deceive. (*Id.*) Paragraphs 70–79 support the materiality of the undisclosed prior art and are based on the findings and decisions of the PTAB and the Federal Circuit in the related patent litigation. (D.N. 54-1, PageID.248; *see also* D.N. 54-3, PageID.271–72 ¶¶ 70–79) Paragraphs 80–108, which Werner states are based on newly discovered facts, allege that Louisville Ladder intentionally withheld critical information and deceived the Mexican Patent Office on at least two occasions and the U.S. Patent Office on at least four occasions to secure patents that covered features it did not invent. (D.N. 54-1, PageID.255; D.N. 54-3, PageID.273–78 ¶¶ 80–108) Werner asserts that Louisville

Ladder did not disclose the following information: (1) the prior art 2001 Louisville Catalog, the prior art Plotner patent, or the prior art Werner Brochure to the Mexican Patent Office (D.N. 54-3, PageID.273 ¶ 83), and (2) the Multipurpose Ladder or its related advertisement to the U.S. Patent Office. (*Id.*, PageID.278 ¶ 107; *see also id.*, PageID.271–78 ¶¶ 70–108) Louisville Ladder opposes the amendment, arguing that it would "cause unfair prejudice to Louisville Ladder, impose unwarranted burdens on the Court, and unduly delay resolution of this case," and is futile. (D.N. 55, PageID.306; *id.*, PageID.307)

## II.

Generally, a court should freely grant leave to amend. *See* Fed R. Civ. P. 15(a)(2). Sixth Circuit precedent "manifests 'liberality in allowing amendments to a complaint.'" *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (quoting *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015)). Nevertheless, a court need not grant a motion to amend when the reason for amendment is improper, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court will consider whether Werner has provided a proper reason for the amendment.

### A.   Unfair Prejudice, Unwarranted Burden, and Undue Delay

"Ordinarily, delay alone[] does not justify denial of leave to amend." *Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 636 (W.D. Ky. 2018) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). But, "at some point[,] delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party." *Id.* (quoting *TIG Ins. Co. v. Hosp. Corp. of Am.*, No. 1:11CV-00043-JHM, 2014 WL 3118863, at *7 (W.D. Ky. July 7, 2014)). "Courts typically find undue delay in cases that are post judgment

. . . and in cases where discovery has closed and dispositive motions deadlines have passed." *Id.* at 636–37 (quoting *TIG Ins. Co.*, 2014 WL 3118863 at *7).

Louisville Ladder argues that granting Werner leave to amend would "cause unfair prejudice to Louisville Ladder, impose unwarranted burdens on the Court, and unduly delay resolution of this case." (D.N. 55, PageID.306) To support its unfair prejudice argument, Louisville Ladder asserts the following: (1) "[t]he parties are, or at least should be, prepared for trial, since they have been litigated [sic] the underlying validity of the '731 patent for nearly four years"; (2) "Werner's proposed amendment" is "an excuse to reopen discovery on six additional patents"; (3) "Louisville Ladder would be forced to expend additional and significant amounts of time and resources engaging in such discovery"; (4) "Werner does not assert any new claims based on the six [additional] patents or seek any relief related to these patents"; and (5) the additional patents are "entirely irrelevant and immaterial" to the prosecution of the '731 patent. (*Id.*, PageID.308; *see also id.*, PageID.309)

Similarly, to support its unwarranted burden and undue delay arguments, Louisville Ladder contends that: (1) the proposed amendment will "significantly delay the resolution of this case"; (2) discovery has been exchanged and "this case should be ready for trial"; (3) "[t]he proposed amendment would expand discovery to include requests concerning the six additional patents"; (4) the additional allegations about patents not at issue in this case would not "serve to promote judicial efficiency"; and (5) the proposed amendment "would only serve to increase the likelihood of discovery disputes over the other patents" and result in "'at least' six mini trials." (*Id.*, PageID.309; *see also id.*, PageID.310) The Court is not persuaded by these arguments.

On June 13, 2022, the Court issued a Scheduling Order imposing the following deadlines: (1) July 28, 2022, for initial discovery disclosures; (2) August 4, 2022, for any motion to amend

pleadings or motion to join additional parties; (3) May 4, 2023, for all discovery; (4) April 14, 2023, for supplementations under Federal Rule of Civil Procedure 26(e); and (5) June 13, 2023, for all dispositive motions and any motions objecting to the admissibility of expert witness testimony. (D.N. 53, PageID.243–44 ¶¶ 1–2, 4–6)  Werner's motion to amend was filed on August 4, 2022 (*see* D.N. 54), which falls within the timeframe outlined in the Court's Scheduling Order and nine months before the close of discovery.  (*See* D.N. 53, PageID.243–44 ¶¶ 2, 4)  Based on these facts, Louisville Ladder fails to show that unfair prejudice to Louisville Ladder, unwarranted burden on the Court, or undue delay would occur as a result of the requested amendment.  *See Sims*, 349 F. Supp. 3d at 637 (denying an undue delay argument when the amended complaint was filed "prior to discovery" and "within the timeframe set by the Court's . . . Order").  Furthermore, Werner's proposed second amended complaint (D.N. 54-3) "does not assert any additional claims or rely on information" that is not readily available to Louisville Ladder.  *Sims*, 349 F. Supp. 3d at 637.  Under these circumstances, Louisville Ladder "cannot articulate" how granting Werner's motion would cause unfair prejudice to Louisville Ladder, unwarranted burden on the Court, or unduly delay the resolution of this case.  *Id.*  Accordingly, Louisville Ladder's arguments fail.  *See id.*

**B.    Futility**

Louisville Ladder further argues that the proposed second amended complaint is futile, asserting that paragraphs 80–108 are legally deficient and paragraphs 80–85 violate international comity.  (D.N. 55, PageID.310–15)  "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'"  *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737–38 (6th Cir. 2022) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)); *see also Beydoun v. Sessions*, 871 F.3d 459, 469

5

(6th Cir. 2017). The Court must therefore determine whether Werner's proposed second amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet the plausibility standard, Werner must "plead[] factual content that allows the court to draw the reasonable inference that [Louisville Ladder] is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* (citing *Twombly*, 550 U.S. at 555). A claim whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). As explained below, Werner's proposed second amended complaint meets the plausibility standard articulated in *Iqbal*.

    1.    **Inequitable Conduct**

"Inequitable conduct is a defense to patent infringement that, if proven, renders the asserted patent unenforceable." *Belcher Pharms., LLC v. Hospira, Inc.*, 11 F.4th 1345, 1352 (Fed. Cir. 2021) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011)). "'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity under [Federal] Rule [of Civil Procedure] 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys.*, LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). Thus,

> to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [Patent and Trademark Office (PTO)]. Moreover, although "knowledge"

6

> and "intent" may be avowed generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328–29.

First, the Court must determine whether Werner's proposed second amended complaint sufficiently "plead[s] the 'circumstances' of inequitable conduct with the requisite 'particularity' under [Federal Rule of Civil Procedure] 9(b)." *Id.* at 1328; *see also id.* at 1328–30. The proposed second amended complaint names Paul R. Swiderski, Donald L. Gibson, Michael S. Gaynor, and Eric V. Chevalier as the specific individuals associated with the filing of the application issuing the '731 patent, who knew of material information and deliberately withheld or misrepresented it. (*See* D.N. 54-3, PageID.264 ¶ 31; *see also id.*, PageID.264–67 ¶¶ 32–51 (detailing the named individuals' knowledge of the material information and their deliberate nondisclosure or misrepresentation to the PTO); *see also id.*, PageID.271 ¶ 68 (stating that the name individuals withheld material information "with the intent of deceiving the Patent Office into granting patent claims to which neither" they "nor Louisville Ladder was entitled")) The proposed second amended complaint further identifies which claims of the '731 patent, and which limitations in those claims, the withheld material information are relevant to, and where in those references the material information is found. (*Id.*, PageID.268–69 ¶¶ 52–59) Werner also alleges in the proposed second amended complaint that the undisclosed prior art was material to the '731 patent and identifies the particular claim limitations, or combinations of claim limitations absent from the information of record. (*Id.*, PageID.269–70 ¶¶ 60–66) Additionally, paragraphs 70–79 support Werner's argument that the withheld prior art was material to the prosecution of the '731 patent. (*Id.*, PageID.271–72 ¶¶ 70–79) These paragraphs—to which Louisville Ladder does not object (*see* D.N. 55)—outline the findings and decision of the PTAB, affirmed by the Federal Circuit,

that the "undisclosed prior art 2001 Louisville Catalog, Plotner patent, and 2000 Werner Brochure are and were material for the patentability of [the] '731 patent claims 8-16 and 19-20." (*Id.*, PageID.272 ¶ 79; *see also id.*, PageID.271–72 ¶¶ 70–79; D.N. 30, PageID.179 ¶ 3; D.N. 38, PageID.197 ¶ 7)  The PTAB also cancelled claims 8–16 and 19–20 of the '731 patent based on the same prior art.  (D.N. 54-3, PageID.272 ¶ 74)  Thus, Werner's proposed second amended complaint has "identif[ied] the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *See Exergen Corp*, 575 F.3d at 1328; *see also id.* at 1328–30.  The Court therefore finds that Werner's proposed second amended complaint sufficiently "plead[s] the 'circumstances' of inequitable conduct with the requisite 'particularity' under [Federal Rule of Civil Procedure] 9(b)." *See id.* at 1328; *see also id.* at 1328–30.

Next, the Court must determine whether Werner's proposed second amended complaint contains "sufficient allegations of underlying facts" that give rise to the reasonable inference "that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *See id.* at 1328–29.  "Each *individual* associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a *duty to disclose* to the [PTO] all information known to that individual to be material to patentability." 37 C.F.R. § 1.56(a) (emphasis added).

With regard to the first requirement, knowledge of the withheld material information, the proposed second amended complaint alleges that Louisville Ladder and several of its employees knew of its public advertising and sale of the Rhino 375 ladder and its own prior art, and of Werner's prior art. (*See* D.N. 54-3, PageID.264–66 ¶¶ 26–44)  More specifically, it alleges that:

8

      31.    On July 30, 2002, Louisville Ladder employees Paul R. Swiderski, Donald L. Gibson, Michael S. Gaynor, and Eric V. Chevalier filed Patent Application Serial Number 10/207,926 [sic], which the U.S. Patent Office would later issue as the '731 patent on February 21, 2006.

      32.    By the time Mr. Swiderski, Mr. Gibson, Mr. Gaynor, and Mr. Chevalier applied for the '731 patent, Louisville Ladder had been publicly using, advertising, offering to sell, and/or selling the RHINO 375 stepladders and the FULL METAL BOOT ladder boot for approximately three years.

      35.    In 1994, while Mr. Gibson was employed by Werner, Werner released the first of several series of stepladders including the innovative EDGE brace, which covered and protected the ends of the ladder rails and provided support for the bottom step of the ladder. By the time Mr. Gibson left Werner to join Louisville Ladder in 1999, Werner had been publicly using, advertising, offering to sell, and selling stepladders with the EDGE brace for approximately five years.

      37.    By July 30, 2002, Werner stepladders with the EDGE brace had become some of the most popular and successful stepladders sold in the United States.

      40.    On information and believe [sic], Mr. Gibson was also aware of the Plotner patent as a result of his work for Werner as an engineer from 1990 to 1999.

      41.    On information and belief, prior to July 30, 2002, Louisville Ladder and its employees, including Mr. Swiderski, Mr. Gibson, Mr. Gaynor, and/or Mr. Chevalier, regularly monitored the advertising and sales of competitor's products, including products advertised and sold by Werner.

      42.    On information and belief, prior to July 30, 2002, Louisville Ladder and its employees, including Mr. Swiderski, Mr. Gibson, Mr. Gaynor, and/or Mr. Chevalier, regularly monitored patents granted to competitors, including patents granted to Werner.

      44.    On information and belief, Mr. Swiderski, Mr. Gibson, Mr. Gaynor, and/or Mr. Chevalier were aware of the Plotner patent on or before July 30, 2002.

(*Id.*, PageID.264–66 ¶¶ 31–32, 35, 37, 40–42, 44; *see also id.* at ¶¶ 33–34, 36, 38–39, 43 (for additional allegations to support Werner's claim that Mr. Swiderski, Mr. Gibson, Mr. Gaynor, and/or Mr. Chevalier had knowledge of the withheld material information)) Based on these substantive allegations, the Court finds that the proposed second amended complaint provides sufficient "factual basis to infer that [at least one] specific individual, who owed a duty of

disclosure in prosecuting the ['731] patent, knew of the specific information in [Louisville Ladder's Rhino 375 ladder, Louisville Ladder's prior art, and Werner's prior art] that is alleged to be material to the claims of the ['731] patent." *See Exergen Corp.*, 575 F.3d at 1330.

As to the specific intent to deceive the PTO, Werner alleges that "Mr. Swiderski, Mr. Gibson, Mr. Gaynor, and/or Mr. Chevalier breached their duty to disclose information which is material to patentability as defined in 37 CFR § 1.56" and "withheld material information . . . with the intent of deceiving the Patent Office into granting patent claims to which neither the named inventors nor Louisville Ladder was entitled." (D.N. 54-3, PageID.271 ¶¶ 67–68) Paragraphs 80–108 of the proposed second amended complaint bolster these allegations and claim that Louisville Ladder has a history of deliberately withholding known, material information from the Mexican and U.S. Patent Offices. (*See id.*, PageID.273–78 ¶¶ 80–108) Werner asserts that Louisville Ladder intentionally withheld critical information and deceived the Mexican Patent Office on at least two occasions, and the U.S. Patent Office on at least four occasions, to secure patents covering features it did not invent. (*See id.*) Werner alleges that Louisville Ladder did not disclose the prior art 2001 Louisville Catalog, the prior art Plotner patent, or the prior art Werner Brochure to the Mexican Patent Office (*id.*, PageID.273 ¶ 83), or the Multipurpose Ladder or its related advertisement to the U.S. Patent Office. (*Id.*, PageID.278 ¶ 107; *see also id.*, PageID.273–78 ¶¶ 80–108) Werner further claims that Louisville Ladder's "routine practice of withholding material prior art to secure patents is expressly relevant [to proving the intent element of inequitable conduct] and admissible under [Federal] Rule [of Evidence] 406." (D.N. 56, PageID.325 (citing Fed. R. Evid. 406)) The Court agrees.

"Intent need not be proven by direct evidence; it is most often proven by a showing of acts, the natural consequences of which are presumably intended by the actor." *Molins PLC v. Textron,*

10

*Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995) (citing *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983)); *see also id.* at 1180–81 ("[I]ntent must be inferred from the facts and circumstances surrounding the applicant's conduct." (citing *Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1189–90 (Fed. Cir. 1993))). For example, "[t]hose who are not 'up front' with the PTO run the risk that, years later, a fact-finder might conclude that they intended to deceive." *Id.* at 1182. Werner's proposed second amended complaint (D.N. 54-3) contains "sufficient allegations of underlying facts" that give rise to the reasonable inference "that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *See Exergen Corp.*, 575 F.3d at 1328–29; *see also id.* at 1329–30. The Court therefore finds that Werner's proposed second amended complaint, accepted as true at this stage, satisfies the pleading requirements of Rule 9(b). *See id.* at 1328–30.

### 2. International Comity

Louisville Ladder also argues that paragraphs 80–85 of the proposed second amended complaint would violate international-comity principles by requiring the Court to "delve into legal and factual issues regarding the validity of a foreign country's patent." (D.N. 55, PageID.312) Louisville Ladder specifically argues that the amended complaint improperly "seek[s] a ruling from this Court as to whether Louisville Ladder's Mexican patents are valid based on the nondisclosures by Louisville Ladder before the Mexican Patent Office" and that "this Court lacks jurisdiction to interfere with the determination of a foreign court's decision as to the validity of that country's patent." (*Id.*, PageID.313)

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international

11

duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws." *Chavez v. Carranza*, 559 F.3d 486, 495 (6th Cir. 2009) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). However, "[i]nternational comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction." *Yukos Cap. S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 28, 29 (2d Cir. 2015), *as amended* (Mar. 2, 2015) (quoting *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1049 (2d Cir.1996)); *see also Chavez*, 559 F.3d at 495 (citing *Hartford Fire Ins. Co. v. Cal.*, 509 U.S. 764, 798 (1993)); *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16CV-00024-RGJ-RSE, 2019 WL 1261352, at *13 (W.D. Ky. Mar. 19, 2019) (citation omitted). A court can only reach the issue of comity "if it finds a true conflict exists, that is, when the laws of one country 'require conduct that violates [the laws of the other].'" *Yukos Cap. S.A.R.L.*, 592 F. App'x at 29 (alteration in original) (quoting *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d at 1049); *see also Phoenix Process Equip. Co.*, 2019 WL 1261352 at *13 (citing *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14CV04394AJNBCM, 2017 WL 7512815, at *10 (S.D.N.Y. Dec. 29, 2017)). The Court cannot make such a finding here.

First, Louisville Ladder has not identified any true conflict between domestic and foreign law (*see* D.N. 55), and contrary to Louisville Ladder's assertions, Werner does not ask the Court to determine whether Louisville Ladder's Mexican patents are valid. (*See* D.N. 54-3) Moreover, the proposed second amended complaint does not implicate any foreign law or judgment. (*See id.*) Rather, Werner seeks to use Louisville Ladder's nondisclosures to the Mexican Patent Office as "data points in the larger pattern of Louisville Ladder withholding material prior art—and particularly its own prior art products and advertising—from patent examiners." (D.N. 56, PageID.329) In sum, paragraphs 80–85 of the proposed second amended complaint do not create

a "true conflict" between the laws of Mexico and the United States and thus do not violate international comity. *See Chavez*, 559 F.3d at 495.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)   Werner's motion for leave to file a second amended complaint (D.N. 54) is **GRANTED**.

(2)   The Clerk of Court is **DIRECTED** to file Werner's second amended complaint (D.N. 54-3) in the record of this matter.

(3)   The **STAY** first entered on June 12, 2019 (*see* D.N. 23; D.N. 33; D.N. 45), is hereby **LIFTED** and the undersigned requests that within **thirty (30) days** of entry of this opinion, Magistrate Judge Colin H. Lindsay schedule a status conference to develop the litigation plan going forward.

January 20, 2023

David J. Hale, Judge
United States District Court